Page number 23-5067. Medical Imaging & Technology Alliance and Advanced Medical Technology Association for the Advalence v. Library of Congress and Carla Hayden in her official capacity as Librarian of Congress. Mr. Kimberly for the Advalence, Ms. Myron for the Appellees. Good morning. Good morning, Your Honors. May it please the Court, my name is Michael Kimberly and I represent the Appellants. Your Honors, if I may, I'd like to start where I think there's common ground among the parties and the District Court, and that's that when the Library of Congress uses APA, Notice and Comment Rulemaking Procedures, to promulgate a regulation that's published in the Federal Register, codified in the Code of Federal Regulations, and implements a statute that settles the rights of regulated parties with the force and effect of law, it's acting as a component of the Executive Branch and not the Legislative Branch. Okay, but let's talk about that because that's somewhat of a hybrid argument that when an agency has certain functions that are Executive and then certain functions that are Legislative, somehow that we allow the APA to separate that out and then allow there to be APA review as opposed to looking at categorically what the agency is or the entity is. Your Honor, what this Court's cases teach on that front, and I think Washington Legal Foundation is a good starting point, Pickus and Ryan are other examples, is that determining whether a government entity is an agency for APA purposes. What the Court is to look at is the branch of government in which that entity is located. And located in Congress here. No, that's the thrust of our point, Your Honor, is after intercollegiate there can be no question that in this respect the Library really is a unique agency with feet in both branches of government. It is unquestionably exercising executive authority. This is the quintessence of the execution of laws to promulgate regulations that implement them. It can't be a part of the Legislative Branch in undertaking that function. If it were, we'd have a very serious separation. So that's what I'm getting at. Can you separate or segregate the functions to then determine based on what function that they are performing at that particular time that that then determines whether or not you come under APA review? And so I would say, Your Honor, with respect to agencies that are categorically within the Executive Branch, the answer is no. I think the question with respect to the Library is somewhat different. You have to ask what role, sort of what hat, if you will, it's wearing at a given time. It has a Legislative Branch hat and it has an Executive Branch hat. It's unique, I think, among agencies, certainly among agencies that this Court has considered in any of its prior APA cases. But have we ever found that you can, again, segregate these roles and then determine when it's exercising a particular role? For example, in the Executive Branch, that's when it then comes under APA review, when otherwise it also has legislative functions. Your Honor, I think the relevance of the function that the Library is playing is not direct relevance, but rather relevance insofar as it indicates the branch within which the Library is with respect to the action that it's undertaking. So, and I would add that the idea that the APA's definition of agency allows for consideration of function is baked into the definition of itself. 5 U.S.C. Section 701 specifies, for example, that even with respect to purely executive government entities, any that, quote, perform, not perform, but functions conferred by Section 1738 and so forth are to be excluded from the APA. Those functions relate to things like mortgage insurance. So, the APA itself accounts for the idea that sometimes function is taken into account. The distinction between Congress and the courts and the Executive itself embodies an understanding that function is relevant to determining whether a government entity is an agency or not. Do you have other examples of other agencies treated that way? Were their functions changed? No, Your Honor, because, as I said, I think the Library is, in this respect, unique. We're not aware of any other agency that has been characterized by this Court and as a part of the Legislature and at times functions as part of the Executive. This Court has dealt— Kimberly, then why did you not raise your separation of powers claims on appeal? Because they were raised below and decided by the District Court. So, I'm curious about that. Your Honor, it's because we take intercollegiate at face value and we understand the government in this case to acknowledge and agree that the Library is, in fact, a component of the Executive branch. So, what would be the consequences if this Court were to hold that the Library is an agency for purposes of the APA? Then would all of the Library's congressional-type functions also be subject to APA review? I don't think the Court has to say that, Your Honor. I think it's enough to say that for purposes of resolving this appeal, that when the Library is engaged in traditional APA notice and comment rulemaking—again, quintessential executive exercise of executive power—that in that role, it is an agency for purposes of the APA. So, then how would we decide which of its functions in future cases were executive and which were legislative? Well, Your Honor, I think the Fourth Circuit's decision in Elcha Corporation gives the roadmap for understanding how that might work. I'd say, I think probably what you're looking at really is just whether the Library is engaged in rulemaking. We've not been able to conceive any other circumstance in which the Library is exercising purely executive power. There's lots of statutory rulemaking authorities, some of which just involve internal matters or matters that perhaps relate to its function as some kind of support entity of Congress. Would those actions all become APA reviewable? Your Honor, I don't think so. You don't think so. But once we've said it's an agency, then what's the consequence? Well, but again, I don't think the Court has to say it's an agency for all and every purpose or all purposes. I think it's enough to say when it is engaged in APA rulemakings, it's plainly an agency. Was that circular APA rulemaking? I mean, what about the other rulemakings? Well, I would say about the other rulemakings, Your Honor, first of all, those are not undertaken according to notice and comments. There's not publication in the Federal Register, which is another indication that Congress understood that the Library is an agency for this purpose. The Congress itself will issue rules and regulations for, say, conduct within the capital complex. That is not an exercise of executive authority, and we wouldn't say that it is with respect necessarily to the Library either. There's nothing inherent in that sort of self-governance and administration that's inherently executive or implementing the law the way that a regulation that settles the rights of private regulated parties does. But what about when we've come out right and said the Library of Congress is not an agency as defined under the Administrative Procedure Act? The Court has said that at least three times. We're supposed to look at what our colleagues have said in before our sittings. We've said it definitively, clearly, and explained it enough so that I wasn't confused about what my colleagues in the past thought. In fact, I was on one of the cases. We have held against you. The precise point that you have now advanced in this Court has been rejected at least three times by this Court. Your Honor, I absolutely must disagree, respectively. Clark is the starting point, a case from 1984 that predates the DMCA, which gave the Library this executive rulemaking power. That case has to be viewed just like ethnic employees has to be viewed through the facts of the case. And the facts of that case were an employment dispute concerning a First Amendment retaliation claim did not implicate the Library's question whether the Library, when it is wearing its executive hat, when it is functioning as, in the words of intercollegiate, a component of the executive branch, it must be understood as an agency. I would say an ethnic employee involves the same basic fact pattern. It's an employment dispute. None of the other cases where Clark is cited for this proposition turns on this proposition at all. So I think it would be respectfully incorrect to say that any of the other cases hold it. We must be reading different cases. There are two other cases in addition to the one you've mentioned, which the Court has clearly said that the Library of Congress is not an agency under the APA. And it is said in such a way that I was not confused. It would not matter about functional. No one has accepted this functional analysis that you're offering us now. And we have said consistently, and I say to myself, why would I walk away from my colleagues who have said in the past, it is not an agency under the APA. Period. Your Honor, there are two responses to that, if I may. The first response is this question just wasn't posed in those other cases. The DMCA was enacted, the DMCA, which accords the Librarian executive rulemaking power, was not enacted until after Clark was decided. So it just wasn't. Not just Clark. There are cases after Clark. Dealing with the same basic fact pattern as Clark. And Your Honor, what I would say beyond that is. None of them limited themselves that way. They took the legal question that you're now posing, and they gave an answer that's inconsistent with the one that you're offering. They rejected it. Your Honor, the question whether the library was for any one purpose or another, an element of the executive branch that constitutes an agency, just wasn't presented in those cases. It's not surprising that the court wouldn't acknowledge a limit that wasn't brought to its attention at the time and wasn't relevant to the outcome of the case. I would add additionally, Your Honor, that we have here the canon in favor of judicial review and the notion that the government's position in this case is that the word Congress appearing in Section 701 has to be understood to include an agency that functions as a component of the executive branch. We don't think that's a plausible way to read the statute at all, but if it were, it certainly isn't the only permissible reading of the statute. And therefore, it's one that this court needs to resolve under the canon in favor of judicial review in favor of diversity. Mr. Kimberly, so it seems to me, I mean, when the APA was enacted in the 40s, the Library of Congress did not have any executive functions or executive powers that were assigned to it. And our cases recognize that broadly speaking, in some kind of historical sense, the Library of Congress is part of the Congress or some kind of auxiliary to Congress. And then it seems to me, as you've suggested, the Library has been given making authority and given executive powers by Congress and the Copyright Act and the DMCA. And so I think you have to have an account of which one of these things trumps, right? Is it the fact that they now have executive power and so therefore an agency within the meaning of the APA? Or do we still understand it as somehow part of the Congress which is exempted from the APA? And I think those two things are in tension in part because of subsequent statutes and subsequent powers that have been assigned to the Library. And your Honor, if you're inclined to look at it in that categorical way, that it's got to be one or the other. I think after enactment of the DMCA and after this Court's opinion in intercollegiate, there can be no question but that it is a component of the executive branch and not the legislative branch. Well, it could be a component of the executive branch and then possibly still exempted from the definition of agency because it's part of the Congress. And I think, Your Honor... Because there are other exemptions, there are other entities that exercise executive power that are also exempted from APA review. So I think you have to have some account of why the Library has sort of fallen out of that congressional exemption category. And the answer simply is the allocation to it of executive rulemaking power. Congress is even... So take as given for purposes of this argument that prior to the assignment to the Library of executive rulemaking functions, it was a part of the Congress. Just assume that. Yeah, just assume for the sake of argument. Congress can convert the Library into a executive agency by allocating to it powers that cannot be exercised by an element of the Congress and must be exercised only by elements of the executive branch. I would add, we have other textual clues here that Congress would not have intended to exclude the Library from judicial review in circumstances like this. The Librarian herself is appointed by and removable by the President, suggesting that control over this agency is within the executive branch. And again, it's utilization of the Code of Federal Regulations and the Federal Register, which are two things that Congress has said very expressly, are things that only executive agencies within the executive branch are empowered to do. There's no question the Library is engaging in that kind of traditional notice and comment rulemaking using the Federal Register and the Code of Federal Regulations. There's a strong presumption in favor of judicial review of actions like that. And even if it's conceivable that the word Congress could be read by this court to cover the Library, it's certainly true that it also can be read not to cover the Library. And under the canon favoring judicial review, that is the interpretation the court is duty to adopt. And so do you think we should read the Copyright Act and the DMCA as making those regulations APA reviewable? And do you think that's clear? I think it is clear, Your Honor, that the DMCA doesn't say anything about APA review, unlike the Copyright Act. No, it doesn't. But what it does is clearly assign to the Librarian purely and essentially executive rulemaking functions, which are presumptively subject to the APA. I submit no reason to think that in assigning to the Library tasks that only agencies can do, such as notice and comment rulemaking using the Federal Register, culminating in the codification of a rule in the Code of Federal Regulations, that the Congress would have had anything else in mind. And again, that's why this Court has a clear statement rule for statutes that deny judicial review of agency action. There would have to be a clear statement in the DMCA or elsewhere that Congress didn't want this sort of rulemaking reviewed. And we know that Congress knows how to do that. For example, it exempts the Postal Service from judicial review under the APA using clear, plain language to that effect. There's no such language here with respect to the Library. We know after intercollegiate that it is a component of the executive branch that is presumptively subject to judicial review. But at least here we have the U.S. copyright laws that make the Copyright Office a subsidiary of the Library of Congress, and that's subject to APA. And, you know, coming up as a subset of the Library of Congress, so would it not be almost duplicative, you know, to allow the Library of Congress to also be subject to APA review when we would already have that situation covered? Your Honor, I don't think so, in part because we don't understand at the time that Section 701E was adopted that the Librarian was exercising purely executive rulemaking powers the way that it does today. 701E was part of a broader sort of cleanup statute for the administration of copyright laws in the Library of Congress as a whole. It's what established statutorily the Copyright Office begin with, but 701E more importantly says that all actions of the Copyright Office are subject to judicial review. Our position is that the Library is a hybrid. There are some roles in which, as this Court said, in intercollegiate, there are some roles in which it's best understood as a congressional agency, some in which it's understood as an executive agency. Our position is when it is acting as an executive agency, engaging in that notice and comment rulemaking, that then it is subject to judicial review, which is not necessarily covered by 701E. You kind of suggest, I'm sorry, that the Library is required to publish in the Federal Register, but that's not really true, is it? No. No, I misspoke if I said it's required to publish in the Federal Register. It does publish in the Federal Register. It has all along run to the eighth triennial rulemaking every single time it is published notices of inquiry, notices of proposed rulemakings, and final rules in the Federal Register. This is a clear indication that every other element of the executive branch understands the Library to be an executive agency for purposes of the Federal Register Act, which bears the same substantive meaning of the term agency as does the APA, as this Court held in Washington Legal Foundation. Mr. Kimberly, is it your view after intercollegiate that once this Court said that the Library is a and that the librarian is the head of a department within the executive branch, then by definition the Library cannot be part of the Congress within the meaning of the APA? Within the meaning of the APA, yes, Your Honor, at least with respect to, well, maybe the way to think about it is that it's always an agency, but when it's serving those legislative functions, those legislative functions perhaps, there are some different characteristics that make it non-reviewable under the APA. I think in... Are those areas in which its actions may be non-reviewable, are they non-reviewable because they're legislative or simply because they're actions that would, even if they were undertaken by the Department of Agriculture, would be non-reviewable because they're just not actions that sort of set the rights of parties in a legally enforceable way. I think that's probably the way to think about it. If you're inclined to think about the Library as either in the executive branch or in the legislative branch, and therefore either as an agency or not, I think that's the way to think about it, and there's still reason to think those sorts of actions would not. I'm not sure that we're allowed to think of something as being a hybrid entity. I mean, the Constitution has three separate branches, so I mean, I'm not even sure that we can't, I mean, do you think it's within the bounds of the Constitution to think about some entity as being both part of the legislative branch and part of the executive branch? You know, Your Honor, I don't think it is squarely foreclosed. I think about the vice president, for example, obviously an official within the executive branch. That's within the Constitution. The vice president wears two hats. It is, and I, look, I don't want to argue against myself here because I think if the Library is one thing or the other, after the DMCA and this court's decision in intercollegiate, as I say, it's got to be an executive branch. I guess where I'm going is I'm not sure the court has to go that far in this case. We're happy for the court to take that approach if that's what it prefers. It's interesting. I mean, the Supreme Court, you know, used to say that the independent agencies were, you know, quasi-judicial or quasi-legislative, and there are nine justices on the Supreme Court all agree now that independent agencies are within the executive branch. I wonder if there's some analogy with the Library of Congress. There may be, Your Honor. We take our clue from intercollegiate, which describes the Library in some circumstances as a quote-unquote congressional agency. You know, if the court feels that the next step is the appropriate one in acknowledging that the Library is a component of the executive branch in all circumstances, again, that's just a different road to the same outcome, which is, at bottom, this is textbook, like, perfect example executive agency rulemaking that the Congress responsible for the APA, of course, would have understood to be subject to judicial review under the APA's judicial review And just so that I'm clear, because we have talked about cases in which this court has already decided that the Library of Congress is not an agency, what is your opinion about how we deal with what is already precedent in this court? So I think you can look at cases that predate the DMCA, and I believe that includes, I'm sorry, I'm forgetting the publication date of ethnic employers, but it certainly includes Clark. I believe it also includes ethnic employers, which was a 1990s decision, and say simply that the DMCA is an intervening development that, as the court recognized in an intercollegiate, sort of changes the character of the Library and allows this court to recognize that Clark has since been abrogated. That would be an outcome we'd be happy to have the court reach. We think it would be appropriate and consistent with the principles that we've briefed. So you're offering to write the order? Sorry? You're offering to write the order? Sure, if you'd like. In all events, whether it's a more modest approach that recognizes consistent with intercollegiate, with some of the language suggested in intercollegiate that really got feed in two branches, or instead only one, either way, I think Clark doesn't control this case because it involved different facts. It did not involve the Library acting as a component of the executive branch, and so these issues just weren't before the court in that case, or in ethnic employees, and that the DMCA and intercollegiate are intervening developments that abrogate that line of precedent. Thank you. Good morning. May it please the court, Laura Myron for the government. There are two basic propositions that resolve this case. First, is that an entity either is or isn't an agency for purposes of the APA, and the second is that this court held 40 years ago in Clark that the Library of Congress is. The APA provides a textual definition of an agency that makes fairly that it's an entity by entity analysis. It doesn't speak to what particular function the entity is carrying out in any given case, and that definition has to mean something, and it means the same thing without regard to the claim before. Ms. Myron, don't you, I mean, what is the government's position? It seems now after the Copyright Act and the DMCA that the Library meets the definition of agency as exercising authority of the government of the United States. I guess, do you dispute that proposition that it meets that definition? I mean, before we get to whether it's within one of the exemptions, doesn't the Library of Congress now meet the primary definition of what an agency is? Well, I guess I'm not sure why the copy, if you think the question is whether, you know, does the entity, is it an authority of the government of the United States? It has always been an authority of the government of the United States, and I'm not sure that's true. I mean, our cases describe authority of the United States as being, you know, basically an executive entity. I mean, if you look at cases like Dong versus Smithsonian and Meyer versus Bush, right, authority of the United States means exercising executive power, issuing final and binding rules that affect private parties. So, the Library of Congress didn't meet the definition, the primary definition of agency when the APA was enacted. Well, I disagree with that, Your Honor, and I think 701 of the Copyright Act is particularly good textual evidence of that. I mean, the Copyright Office was engaging in a number of functions that I think plaintiff would describe to you as executive functions prior to the 1976 Copyright Act. In fact, there was a hearing before the relevant committee in which the question was raised about the fact that the APA did not apply to the Copyright Office, and Congress responded to that by enacting 701, which says that all actions of the Copyright Office shall be subject to the APA. It did not say that the Library of Congress shall be an agency for purposes of the APA, and I think 701 also suggests that first, Congress didn't view it as an agency, and second, that it knows how to subject something to the APA expressly when it chooses. So, I'm glad you brought up 701 because 701, the Copyright Office has rulemaking authority, and the actions of the Register of Copyright are subject to APA review. However, the rulemakings by the Register are all subject to the approval of the librarian. So, doesn't that mean that under the copyright, the librarian's approvals of copyright regulations are subject to APA review? Well, no, Your Honor. The establishment of the regulations are subject to APA review because that's an action of the Register. But the regulations can't become final until they've been approved by the Register. Well, there hasn't been any claim in this case that there should be an APA challenge to the approval of a Copyright Office regulation. Oh, but I'm going to say that the library wasn't an agency, and I mean, I don't know what that would mean actually for reviewability of regulations that require the approval of the librarian. Well, respectfully, Your Honor, this Court has already said that the Library of Congress is not an agency. It said so several times, all of which postdate the enactment of Section 701 of the Copyright Act and, in fact, rely in part on that particular provision as textual evidence that the Library of Congress is not itself an agency subject to the APA. Still, the Copyright Act says that these copyright regulations are subject to APA review, and those regulations need the librarian. And then Congress comes along with this kind of smaller Copyright Act, the DMCA, which gives the librarian direct rulemaking authority. I mean, isn't there some maybe natural assumption that Congress wants those regulations, those copyright regulations, to also be reviewable under the APA? Well, no, Your Honor, I don't think you can reverse engineer the definition of an agency based on the use of the term rulemaking in the DMCA. I mean, if Congress had said, you know, and these rulemakings shall not be subject to the APA, there's no reason to think there would be any problem with that. And they could have said that, but they didn't, and they had already created a general structure where copyright regulations were reviewable, even regulations that require the approval of the librarian. So they're not just promulgated by the Register of Copyrights. They are put into effect after the approval of the librarian. Well, there's certainly no question here, and perhaps I'm misunderstanding, but there's certainly no question that the rulemaking at issue here should be subject to APA review because it's an action of the Copyright Office. The statute makes very clear that the Copyright Office submits a recommendation to the librarian who makes the final determination. No, that isn't exactly my argument. My argument is that there are a series of statutes here. We have the APA in the 1940s, we have the Copyright Act, we have the DMCA, and then there's a question about, under the DMCA, should the regulations issued by the librarian be reviewable, you know, under the APA? And maybe one way of reading all of these statutes together, the best reading of reading them all together, is that the librarians' copyright regulations are reviewable under the APA. So I think your argument, Your Honor, is a that the library, you know, sometimes may be an entity for purposes of the APA and sometimes isn't, because certainly I don't take that to sweep into it all of the things that we've discussed in our brief that the Library of Congress does that wouldn't be subject to the APA. And that argument simply is irreconcilable with the text of the APA, which defines an agency as an entity, and also with the way that this Court has understood that question in cases like Washington Legal Foundation and Pickus and Ryan, in which the Court has said that the question of whether something is or isn't an agency for purposes of APA review is an entity by entity. What I'm suggesting is maybe maybe this Court doesn't need to reach the question of whether it's an agency under the APA, but could reach the question of whether these types of regulations under the DMCA are reviewable under the APA, because there are things that are subject to APA review in entities that may not otherwise be agencies. Respectfully, I just don't see how you get there, given that this Court's cases in Clark, which say that the Library of Congress is not an agency, and the particular text of the APA, which provides for judicial review of agency action, it doesn't sort of say wherever there's rulemaking that that shall be subject to APA review. It says there shall be a review of final agency action. I think maybe you're not responding to my question, which is Congress has said the copyright regulations are subject to APA review. Whether or not the library is an agency, they've said that these rulemakings are subject to APA review. So you're saying that, like, why shouldn't we read the DMCA to kind of include that sort of APA review of copyright regulations, because this is effectively a copyright regulation? No, respectfully, Your Honor, the text of the statute is very clear that it is not a copyright regulation, that it is a determination by the Librarian of Congress. That is an important difference, because the librarian makes that determination on recommendation of the Copyright Office, as provided by the statute. But I don't think it's fair to read the rulemaking at issue here as a regulation of the Copyright Office. We're certainly not contesting that regulations of the are subject to APA review. That's provided for in 701. But I don't think you can make this sort of additional jump to think that this is a rulemaking, this is a regulation of the Copyright Office, because the statute very clearly vests the determination with the Librarian of Congress. And as this Court has said, for nearly 40 years, the Librarian of Congress is not, and the Library of Congress is not an agency subject to the APA. Congress has never disturbed that. Section 701 provides additional textual evidence to support the conclusion that Congress used the actions of the Copyright Office as separate from the actions of the Librarian and subject to APA review. And so I just don't see how you get to a conclusion that these particular regulations or rulemakings are subject to APA review. It's particularly where the of the statute and sometimes not. And I want to get back to that the Copyright Office is actually just making a recommendation. It's not final. Yes, Your Honor. In this, the text of the DMCA is very clear that the Copyright Office submits a recommendation with consultation with some other parts of the Department of Commerce, and that the Librarian makes the determination independent of the recommendation or, you know, considering the recommendation, but sort of not as part of the Copyright Office's actions here. And does it matter in this analysis on agency that the Library gets its appropriations from the legislative branch? It's certainly relevant, Your Honor. I mean, that is an argument that, you know, was put before the court in Clark in cases like that and supports the court's conclusion that the Library is not an agency for purposes of the statute. The question whether, you know, something is part of the executive branch or the legislative branch for constitutional purposes is separate from the question of whether it's part of the Congress for purposes of the statutory provisions in the APA. And so other statutory provisions like the legislative appropriation, like Title II, are particularly relevant to the statutory analysis and I think inform the court's decision in Clark and the subsequent cases that the Library is not an agency. Does the Librarian have authority to make the determination that's in dispute here without a recommendation from the Copyright Office? Both the facts are they never came. Can the Librarian just act? The statute provides that the Librarian shall make the determination upon recommendation of the Register of Copyrights. You know, it doesn't say anything about whether the Librarian must adopt the recommendation or can disagree with it and certainly the Librarian is free to disagree with the recommendation if she does not agree with what's been recommended by the Copyright Office. And I think that supports what I think Your Honor is getting at, that the determination is very clearly by statute vested with the Librarian and not with the Register. You've suggested that, you know, Congress, you know, the question is what Congress has done with respect to, you know, how it views the Library of Congress. I mean, you know, one way to think about this is that, you know, when the APA was enacted, the Library was some kind of support entity for Congress and now Congress has actually given the Library fairly substantial executive powers and maybe by statute then Congress has over time taken it out of the Congress for purposes of the APA. I don't think so, Your Honor. I mean, certainly that seems like an argument that Clark was is wrong because the Copyright Act itself regates Clark. Yeah, but Clark wasn't dealing with any of these issues. I mean, it wasn't, you know, it's not a well-developed, there's not well-developed reasoning and even our subsequent cases like Washington Legal Fund suggest that maybe Clark was mistaken. You know, talking about the judiciary, ultimately in Washington Legal Fund we relied, you know, the circuit relied on a statute, the SRA, in making its determination. It didn't rely on Clark and its reasoning. Well, I guess I would also point you to Section 701 of the Copyright Act which shows that even when Congress was enacting the Copyright Act, it recognized that the Library was not an agency for purposes of the APA and gave APA review. It included the Copyright Office itself as part of the APA. So you could view this as maybe being superfluous or you could just view it as kind of belt and suspenders. Like, of course, you know, we're giving them this kind of important rulemaking authority that affects private rights and obligations and so we're going to be very clear that that's going to be subject to the APA. Respectfully, Your Honor, the statutory interpretation principles of this court and the Supreme Court are that we don't interpret provisions like that to be purely superfluous. There doesn't seem to be a reason to think that Congress would do that and, you know, prior to the enactment of the... It's not whether it's superfluous, but I mean, I think, you know, you're reading it to be that there's a negative implication that otherwise the APA would not have applied to the Copyright Office. I'm not sure that the negative implication is the only way to read Section 701. Well, respectfully, Your Honor, that's how this court has understood the application of the APA that the Library of Congress is not an agency for purposes of the APA. But not since intercollegiate. I don't think intercollegiate changes the analysis in any meaningful respect because the question before the court in that case was whether the Library of Congress is an executive department for purposes of the Appointments Clause, for purposes of the Constitution. The Supreme Court in cases like LeBron has recognized that an entity's constitutional status is a separate question from its statutory status. And in fact, part of the argument in that case was that the Library of Congress is for statutory purposes funded through Title II, that it receives its appropriation through the legislative appropriation, that it's not for statutory purposes funded through the Appointments Clause, that it is an executive department. And it looked to the fact that the Librarian of Congress had been appointed by the President dating back to the 1870s. The appointment by the President is not a new change in the law since the Clark and those cases have been decided. And there's no question that executive departments or parts of the executive branch might be exempt from the APA in the definition of agency or otherwise not subject to APA review. And so I just don't see how that gets you to... I think that's true that the constitutional and statutory meetings are distinct. But once this court has said that the Library is a department within the executive branch, how can it for statutory purposes be part of the Congress in APA? Again, I don't think that the question of whether it's a constitutional part of the executive branch reflects on how Congress decided to treat it as part of the statutory definition of an agency within the APA. And certainly, that argument would require this court to consider cases like Clark and Ethnic Employees and Washington Legal Foundation to be wrongly decided, which I don't think is an argument this court can entertain in this. Colleagues, have any further questions? Okay. Yes. Thank you. Thank you. Mr. Kimberly, we'll give you two more minutes. Thank you very much, Your Honor. I think as the case is now presented to the court, it really involves two questions. The first is whether the outcome here is controlled by precedent. And the second is, if it isn't controlled by precedent, is the Library an agency within the meaning of 701B2? On the first question, just two cases have actually held that the Library isn't an agency. Those are Clark and Ethnic Employees. Clark was decided in 1984. Ethnic Employees was decided in 1985. Washington Legal Foundation was a case about the sentencing commission, not about the Library. What it had to say about the Library was dictum. But in any event, it was decided in 1994. All three of those cases predate the Digital Millennium Copyright Act. All three cases predate this court's decision in intercollegiate. And I think it's easy enough to say that those cases, therefore, have been abrogated as recognized by implication in intercollegiate. So that leads to the second question. If it isn't controlled by precedent, what's the right outcome? And on that score, the answer depends on whether the Library, for purposes of this case in particular, or more generally as a categorical matter, is a component of the executive branch. If it is a component of the executive branch, then the outcome must be that its executive rulemakings are subject to judicial review. Because to say otherwise puts the Congress, it meant to include components of the executive branch exercising executive power. Now, whatever you might say about that position, it surely is not compelled by the statutory text. And because we have the presumption in favor of judicial review at play in this case, that means the court has to consider our position and whether it is an alternative, reasonable position that better accords with the presumption that agency rulemakings are subject to review in Article III courts. Our position is at least reasonable, that when Congress said Congress, it didn't mean to include agencies like the Library exercising executive power, undertaking executive rulemakings. That is confirmed further by the Federal Register Act, under which the Library is, by definition of that act and agency, because it uses the Federal Register and the Code of Federal Regulations, all pointing, in our view, to the clear text conclusion that the Library is an agency, and at the very least, to the conclusion that the presumption in favor of judicial review requires review. That was it. Thank you. Thank you, Mr. Kimberly. The case is submitted.
judges: Rao, Childs, Edwards